HARRIS THROWN SILK CORPORATION, complainant.

*v.*

GEORGE HARRIS, BERNARD KLINGBEIL and CHARLES LAMPELL, defendants.

[Decided December 19th, 1923.]

Where all parties to an agreement know that a plain fraud has been committed, but are willing to acquiesce and close their eyes to the irregularities that have been committed they are *particips criminis*, and neither side has clean hands, and therefore is not entitled to relief in this court.

---

On pleadings and proofs.

*Messrs. Humphreys & Sumner,* for the complainant.

*Mr. Filbert L. Rosenstein* and *Mr. William W. Evans,* for the defendants.

LEWIS, V. C.

The stockholders of the Harris Thrown Silk Corporation, the complainant, were George Harris, Charles Lampell (two of the defendants), Elias Goldstein, Walter Leon Hess and the Gosho Corporation. The defendant Klingbeil was connected in a business way with the Gosho Corporation. The defendant Harris was the president of the Harris Thrown Silk Corporation, its general manager, chairman of its board of directors, and the holder of fifty per cent. of its stock. He had a contract covering his services in the capacity of general manager, that, in January, 1922, still had about two and a half years to run. The Gosho Corporation was desirous of obtaining Harris' stock in the Harris Corporation, and negotiations to that end were conducted in behalf of the Gosho Corporation by its attorney, Frank L. Weil, and an agreement was concluded between the parties on January 25th, 1922, whereby Harris was to sell his stock in the Harris Corporation to the Gosho Corporation, and cancel his existing contract with the Harris Corporation, and retire. In addition to the money consideration for this settlement, Harris was to be given a general release by the Harris Corporation. On January 26th, the defendant Klingbeil disclosed to Weil, the attorney of the Gosho Corporation, a transaction between himself and Harris, which had taken place in October, 1921, by means of which he claimed a fraud had been perpetrated upon the Harris Corporation. It appears that Harris had furnished Klingbeil with funds to purchase from the Harris Corporation two hundred and forty pieces of two-thread Georgette silk, which were taken over by him and then transferred to the defendant Charles Lampell, with full knowledge of the fraud. The goods were, in fact, four-thread Georgette, of a far greater value than the two-thread variety. Weil, upon being apprised of this transaction by Klingbeil, directed an examination to be made of the Harris Corporation's books by its expert accountant, which resulted in a verification of Klingbeil's charge. Thereupon, Weil protested against the giving of the general release to Harris by the Harris Corporation, assert-

ing that there might be other irregularities of which they had no knowledge, which would be extinguished by the release. But Harris insisted that the release be given, and said that he would not carry out his part of the agreement unless the Harris Corporation performed its part. Notwithstanding the disclosure of this situation, Weil, who had acted throughout for the Gosho Corporation, secured the execution of the general release exacted by Harris, and on February 1st closed the transaction and delivered the release to Harris in accordance with the terms of the agreement of January 25th, and in pursuance of Harris' demand. Two days later the Harris Corporation instituted a suit in replevin in the supreme court to recover possession of the silk referred to, but that case seems to have been blocked by the release, and recourse was had to this court by the filing of the present bill, in order, I take it, to avoid, if possible, the effect of the release, and ultimately to secure its cancellation and rescission, although the bill in its specific terms appears to be simply a bill praying relief, which amounts to no more than could be obtained by the suit in replevin instituted in the law court.

On the hearing the facts as stated in the bill with respect to the alleged fraud were admitted by counsel for the defendants Harris and Lampell, and the proofs were confined to the evidence offered by the defendant, in an attempt to establish the release; and to the evidence offered by the complainant to show that Lampell had resold the silk, and to fix the amount which he received for it upon such resale. The defendants sought to show that prior to the delivery of the release the complainant had knowledge of the alleged fraud, and that because of its having such knowledge Harris was relieved from the duty which his counsel admitted would otherwise have existed, of disclosing the situation complained of, and that, therefore, the release was immune from attack.

At the conclusion of the hearing I was inclined to the view that the defendants had not succeeded in establishing that the complainant corporation had knowledge in fact of the transaction referred to. I further felt that, inasmuch as the commission of the fraud had been admitted, a duty

23

had rested upon the defendant Harris, by reason of the fiduciary relationship existing between him and the complainant corporation, to make a full disclosure to complainant of the situation referred to before the delivery of the release. An opportunity, however, was given defendants' counsel to submit authorities upon the question of Harris' duty to make such disclosure.

Upon further consideration, however, and after careful examination of the briefs submitted by counsel for the respective parties, I have reached this conclusion: By the transfer of the stock of Harris and his co-stockholders, Lampell and Goldstein, as specified in the agreement of January 25th, 1922, to the Gosho Corporation, the latter corporation acquired complete control of the Harris Corporation. Harris specifically stated that he would not yield up his stock and his contract and his control in the Harris Corporation unless the release referred to was given him in accordance with the express agreement between the parties made at the conclusion of their negotiations on January 25th, 1922. The facts indicate clearly that as soon as the Gosho Corporation became completely in control of the Harris Corporation by the transfer of the stock mentioned to it, and Harris' contract with the Harris Corporation had been canceled, and Harris had been eliminated therefrom, steps were taken in the name of the Harris Corporation to avoid the effect and operation of the very safeguards which Harris had obtained as part of the consideration for the yielding up of his property rights. This latter company became the holder of practically all the stock of the Harris Thrown Silk Corporation, and by the cancellation of Harris' contract for services as general manager of the Harris Corporation, Harris was completely eliminated from the complainant company.

It is inconceivable to me, upon reflection, that Weil could have been in full possession of the facts of this alleged fraud, and could have conducted the examination and inquiry, which he did, in order to verify it, without his having disclosed it to the Gosho Corporation, for whom he was conducting the negotiations with Harris. The Gosho Corpo-

ration secured the stock from Harris and his co-stockholders, and the Harris Corporation obtained the cancellation of its ten-thousand-dollar-a-year contract with Harris, which still had two and a half years to run, and without which he had positively asserted he would not make the arrangement which the Gosho Corporation sought to effectuate with him.

While I am satisfied that the defendants' part in the transaction complained of is tainted in a way that cannot help but subject those parties to the disapproval of a court of equity, still I am of the opinion that the position of the parties with whom Harris was negotiating is equally subject to disapproval.

With full knowledge by all the parties to the agreement that a plain fraud had been perpetrated, to characterize it mildly, they, nevertheless, were willing to close their eyes to the irregularities which had been committed, and to acquiesce in them because of the desire on the one side to secure Harris' rights, and eliminate him from the Harris Corporation; and the desire on the other side to obtain immunity from prosecution upon a liability that was perfectly patent.

This court could not set aside the release without putting Harris in *statu quo,* which, under the circumstances, is now impracticable, and is without power to force a contract upon Harris which he never assented to, and which, indeed, he specifically refused to make, which would be the result of granting the prayer of the present bill. But, however this may be, I am constrained to the view that the parties to this proceeding are *particeps criminis,* and that neither side is here with clean hands.

The bill, therefore, should be dismissed, and I will advise a decree accordingly.